### 40531. EMPLOYEES RETIREMENT SYSTEM
### v. LEWIS, Commissioner, et al.

DECIDED FEBRUARY 27, 1964—REHEARING DENIED
MARCH 19 AND APRIL 2, 1964.

*Eugene Cook, Attorney General, James H. Therrell, Benjamin L. Johnson, Assistant Attorneys General,* for plaintiff in error.

*H. Dale Thompson,* contra.

EBERHARDT, Judge. This case presents an incidental aspect of the line of litigation beginning with *Gay v. Laurens County,* 213 Ga. 518, supra. See *Laurens County v. Keen,* 214 Ga. 32 (102 SE2d 697) ; *Gay v. Lewis,* 215 Ga. 317 (109 SE2d 646) ; *Gay v. Crockett,* 217 Ga. 288 (122 SE2d 241) ; *Gay v. Laurens County,* 217 Ga. 594 (124 SE2d 81). The Employees Retirement System is seeking to have Sheriff Gay's deputies and employees adjudged

employees of Laurens County for the period between the Supreme Court's declaration of the invalidity of the sheriff's salary legislation and the time a new sheriff was elected and a new salary bill was enacted.

■ There is no dispute here between the parties that the deputies and employees of a sheriff are not employees of a county under the common law, unmodified by statute. *Drost v. Robinson,* 194 Ga. 703 (3) (22 SE2d 475). See *MacNeill v. Wood,* 198 Ga. 150 (31 SE2d 14).

In order to change the common law status of the deputies and employees, the Retirement System relies on the 1956 amendment to the contract between it and Laurens County. It is urged that, since the county agreed that the persons involved were its employees in 1956 and made contributions for them, the contract amendment is still binding on the county. Cases exemplified by *Stewart v. Davis,* 210 Ga. 278 (79 SE2d 535) are cited. However, cases such as *Stewart* are distinguishable because the contracts concerned were valid in their inception. Here, the language in the first *Gay* case, 213 Ga. 518, supra, implies what the last *Gay* case, 217 Ga. 594, supra, holds: that the 1952 salary Act was void ab initio.

Viewed in this light it becomes apparent that the System's contention is an ingenious attempt to invoke the doctrine of equitable estoppel in reverse, i.e., by asserting that since the contract became valid with the adoption of the Act of 1960, the county should not be permitted to assert invalidity for the period prior to that time. The application of equitable estoppel was specifically refused in first *Gay,* 213 Ga. 518, supra, where the court said, at page 523, that the county's "knowledge of [the Act's invalidity] and its opportunity to ascertain its invalidity was certainly equal to that of the defendant . . . [I]t was the duty of the [county] before paying out county funds under the Act to ascertain its validity." Furthermore, *Code* § 89-903 provides that "The public may not be estopped by the acts of any officer done in the exercise of a power not conferred." Thus, while the 1956 contract amendment may have been entered into in good faith and payments may have been made thereunder, this could not have the effect of estopping the county, requiring it to make further payments under the contract.

■ (a) As to the deputy sheriffs involved, the System advances the additional contention that a statutory change in their common law status as the sheriff's employees has been made for Social Security purposes by the Act of 1953, as amended (*Code Ann.* § 99-2101, et seq.). The amended Act provides that "The term 'employee' includes an officer of a political subdivision of the State." *Code Ann.* § 99-2102(c). The conclusion drawn by the System is that a deputy is an "officer of a political subdivision" within this definition.

The county is the relevant political subdivision because it is the contracting unit here. The term "county officer" has been variously applied under different constitutional and statutory provisions. To be termed and classified as a county officer within the provisions of Art. XI, Sec. II, Par. I of the Constitution (*Code Ann.* § 2-7901), he must be: (1) elected by the qualified voters of the county; (2) hold office for four years; (3) be a resident of the county for two years; and (4) be a qualified voter. *Houlihan v. Saussy*, 206 Ga. 1, 5 (55 SE2d 557). The following have been held county officers within these constitutional requirements: an ordinary (*Lee v. Byrd*, 169 Ga. 622, 151 SE 28); a clerk of the superior court (*McGill v. Simmons*, 172 Ga. 127 (1), 157 SE 273); a tax collector, tax receiver and sheriff (*Truesdel v. Freeney*, 186 Ga. 288, 292, 197 SE 783); a county treasurer (*Bradford v. Justices of the Inferior Court*, 33 Ga. 332; *Massenburg v. Bibb County*, 96 Ga. 614, 23 SE 998); and a coroner (*McBrien v. Starkweather*, 43 Ga. App. 818 (4), 160 SE 548). Though not within the constitutional provisions the following have been held to be statutory county officers: a member of the board of commissioners and revenues (*Rhodes v. Jernigan*, 155 Ga. 523 (2), 117 SE 432; *Malone v. Minchew*, 170 Ga. 687 (2), 153 SE 773; *Sweat v. Barnhill*, 171 Ga. 294 (9), 155 SE 18; *Hulgan v. Thornton*, 205 Ga. 753, 757, 55 SE2d 115); a county school superintendent[2] (*Culbreth v. Cannady*, 168 Ga. 444, 148 SE 102; *Altman v.*

---

[2]However when the office is created by special statute under which he is named by the county board of education and is not elected by the voters, he is held to be an officer of the board and not of the county. *Richter v. Board of Education*, 149 Ga. 32 (99 SE 28).

*Taylor,* 178 Ga. 689, 692, 173 SE 828; *Marshall v. Walker,* 183 Ga. 44, 187 SE 81); a member of the county board of education (*Stanford v. Lynch,* 147 Ga. 518, 94 SE 1001; *Clarke v. Long,* 152 Ga. 619, 111 SE 31); a county school commissioner—equivalent of a member of the board of education (*McLain v. State,* 71 Ga. 279); and a clerk of the board of county commissioners (*Cooper v. State,* 101 Ga. 783, 29 SE 22).

On the other hand, members of the board of tax assessors (*Barnes v. Watson,* 148 Ga. 822 (4), 98 SE 500), a county registrar (*Andrews v. Butts County,* 29 Ga. App. 302, 114 SE 912), a justice of the peace (*Davis v. Mercer,* 48 Ga. App. 191, 192, 172 SE 669), a notary public and ex-officio justice of the peace (*Overton v. Gandy,* 170 Ga. 562, 153 SE 520), the Solicitor of the City Court of Dublin (*Graham v. Merritt,* 165 Ga. 489, 141 SE 298), the Marshal of the Municipal Court of Atlanta (*Strickland v. Houston,* 173 Ga. 615 (2), 161 SE 262), and a grand juror (*Butts v. State,* 211 Ga. 16 (2), 83 SE2d 610) have been held not to be county officers.

Is a deputy sheriff a "county officer"? As we have noted above, a *sheriff* is so regarded. *Truesdel v. Freeney,* 186 Ga. 288, 292, supra. "Sheriffs are authorized in their discretion to appoint one or more deputies, from whom they must take a bond with sureties." *Code* § 24-2811. "All sheriffs, deputy sheriffs, coroners, jailers, constables, and other officers of court shall be liable to all actions, suits, and disabilities whatever, which they, or either of them shall incur in respect of any matter or thing whatever relating to or concerning their respective offices." *Code* § 24-201.

"Deputy sheriffs and deputy jailors are employees of the sheriff, whom the sheriffs alone are entitled to appoint or discharge. *Board of Commissioners of Richmond County v. Whittle,* 180 Ga. 166 (178 SE 534). They have no duties save alone duties of the sheriff, which as his deputy and his agent they are by law authorized to perform. They are required to give bond for the faithful performance of duties, not to the Governor as required of all public officers unless otherwise provided by law (*Code* § 89-402), but to the sheriff whose deputies or agents they are (*Code* § 89-426). The sheriff is required to give bond payable to the Governor, and his bond is conditioned for the faithful

performance of his duties as sheriff, *by himself, his deputies, and his jailors. Code* § 24-2805. The sheriff, and not the county, is liable for the misconduct of his deputies. *Code* § 24-2812. The tenure in employment of a deputy jailor or deputy sheriff is dependent, not alone upon the will of the sheriff whose employee he is and who may discharge him when he chooses, but also upon the re-election of the sheriff. Thus it is impossible for such deputies to calculate with any degree of certainty when their employment will terminate. The marked difference in the employment of such deputies and that of employees of county commissioners is that deputies perform duties of the sheriff, which ceases when the sheriff leaves office; whereas employees of the commissioners perform duties of their own in rendering services to the county." *Drost v. Robinson,* 194 Ga. 703, 710, supra. Accord: *McCutcheon v. MacNeill,* 197 Ga. 72 (28 SE2d 469).

If not county officers, are deputy sheriffs nevertheless "public officers"? "An office is a public station or employment conferred by the appointment of the government. Any man is a public officer who is appointed by the government and has any duty to perform concerning the public. Nor does it matter that his authority or duty is confined to narrow limits." *Polk v. James,* 68 Ga. 128 (2). "Public officers are, in this country, but the agents of the body politic, constituted to discharge services for the benefit of the people, under laws which the people have prescribed." *State ex rel. Savannah v. Dews,* R. M. Charlton, 397, 400; *Walton v. Davis,* 188 Ga. 56, 58 (2 SE2d 603). Dispensary commissioners have been held to be public officers, *Dallis v. Griffin,* 117 Ga. 408 (43 SE 758), *Waters v. McDowell,* 126 Ga. 807, 56 SE 95), as have county policemen, *Goss v. Gordon County,* 35 Ga. App. 325 (133 SE 68), and an accountant employed to examine and audit the books and records of the county. *Stelling v. Richmond County,* 81 Ga. App. 571 (59 SE2d 414). However a grand juror is not. *McDuffie v. Perkerson,* 178 Ga. 230, 233 (3) (173 SE 151, 91 ALR 1002).

The problem of the status of a deputy sheriff is somewhat confused and confounded by *Hartshorn v. Bank of Gough,* 17 Ga. App. 483 (87 SE 720), holding that "There is in this State such

an office as deputy sheriff"; *Culpepper v. U. S. F. & G. Co.,* 199 Ga. 56 (1) (33 SE2d 168) where it was held that "A deputy sheriff while proceeding en route to serve a jury summons is acting in his official capacity"; and *Gay v. Healan,* 88 Ga. App. 533, 540 (77 SE2d 47) where it was asserted that "a deputy sheriff is not an employee of the sheriff, but is an employee of the county wherein he serves, and is merely appointed by the sheriff," as well as the case of *Johnson v. U. S. F. & G. Co.,* 93 Ga. App. 336, 338 (91 SE2d 779) holding that "There is no question but that a deputy sheriff occupies the dual capacity of public officer and servant of the sheriff under whom and by whose appointment he serves, a sort of hybrid status."

Reviewing this confused and confusing authority, we see that deputy sheriffs are not "county officers" within the constitutional provision though they may be "public officers." We doubt that the sheriff's deputies were "officers of a political subdivision" within the meaning of the relevant legislation during the period here involved, particularly in the light of *Drost v. Robinson,* 194 Ga. 703, supra, and *McCutcheon v. MacNeill,* 197 Ga. 72, supra.

(b) We think the language of the very statute relied upon by the System, as well as language in the contract between it and Laurens County, settles the matter of whether the county must make the Social Security payments for the deputies during the period involved, whether or not they were officers of the political subdivision in fact or within the meaning of Section 2 (c) of the Act (*Code Ann.* § 99-2102c). The Act does provide, inter alia (*Code Ann.* § 99-2102f), that the term "political subdivision" within its terms "means *counties* and incorporated towns and cities . . . etc." (Emphasis added) It is further provided (*Code Ann.* § 99-2104) that each political subdivision may submit and have approved its plan for bringing its employees under the Social Security coverage and upon approval of the plan and its adoption by the employees to be effected in a referendum, it shall be required to make payments to the contribution fund "in consideration of the employees retention in, or entry upon, employment after enactment of this Chapter, to *impose upon each of its employees, as to services which are covered by an approved plan, a contribution with respect to his wages* (as defined in Section 99-2102), not exceeding the amount of tax which would be

imposed by Section 1400 of the Federal Insurance Contributions Act if such services constituted employment within the meaning of this Chapter, *and to deduct the amount of such contributions from his wages as and when paid.* Contributions so collected shall be paid into the contribution fund in partial discharge of the liability of such political subdivision. . . . Failure to deduct such contribution shall not relieve the employee or employer of liability therefor." (Emphasis supplied). Substantially the same provisions appear in the contract between the System and the county.

Under the provisions of the Federal Insurance Contribution Act there is a tax levied for its purposes both upon the employee, by deduction from his wages, and upon the employer who must share a part of it. 26 USCA § 3101 et seq. It is the equivalent of that tax that is to be paid into the contribution fund under the Act of 1953, as amended, and under the contract between the System and the county.

Quite obviously there is no obligation on the part of an employer to make the payment unless the employer *pays wages in some form to the employee,* for unless some wages are paid there is nothing from which to deduct. During the period here involved the county *paid no wages* to the deputy sheriffs. They were paid by the sheriff. There was no way by which the county could have deducted anything from the wages paid by him to the deputies. They did not work for the county; rather they worked for the sheriff. Whether he was required to report them as his employees and make Social Security payments on them is not before us. But we do not think that the law requires or authorizes the county to make the payments on employees of some individual, or to agree to do so.

When not on a salary a sheriff's compensation by way of fees and other emoluments for making arrests, maintaining the jail, attending court, serving writs and other services required or authorized by law to be performed *accrue to the sheriff,* whether performed by him or by his deputy, whether paid by individuals, the county or whomever. Under the fee system the compensation of a deputy sheriff accrues under and is dependent upon his private contract with the sheriff and he can have no claim against the county for it. But when the office is placed on a salary basis

provision is generally, if not always, made at the same time for the payment of salaries to the sheriff's deputies (see, for example, Ga. L. 1953, Nov. Sess., p. 2547, and Ga. L. 1960, p. 2072) so that the county is liable for and makes payment of their compensation. Thus when the sheriff and his deputies are paid salaries the deputies are employees, if not officers, of the county and there is no problem or question of their coverage under the Act of 1953 (*Code Ann.* § 99-2101, et seq.). Since the sheriff himself is a county officer and since a considerable portion of the compensation accruing to him by way of fees, etc., is paid by the county or county authorities, it would seem to pose no problem to find him covered under the Act of 1953, whether on salary or the fee system.

We conclude that absent any payment of wages to them by the county there was neither any obligation on its part to make any deductions or payments, for the law does not require it to do that which it can not do—nor any intention on the parties to the contract that it be done.

*Judgment affirmed. Bell, P. J., and Jordan, J., concur.*